**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

|  |  |  |
|---|---|---|
| **TONY ROWE,** *et al.,* | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| | ) | **19-67C** |
| **THE UNITED STATES OF AMERICA,** | ) | **Judge Campbell-Smith** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTIONS TO CONSOLIDATE**

---

COME NOW Plaintiffs and those similarly situated and submit this Response to the Defendant's Notice of Directly Related Cases and Motion to Consolidate (Doc. 8) and Notice of Additional Directly Related Case and Motion to Consolidate (Doc. 15).  Plaintiffs, on behalf of themselves and those similarly situated, urge the Court to reject consolidation and appointment of a single lead counsel.  As set forth more fully below, Plaintiffs and those similarly situated are in the process of amending their Complaint based on information that they obtained after filing their lawsuit.  Plaintiffs have learned that one or more of their employer agencies failed to pay them their wages and overtime, not directly because of the lapse in appropriations, but because of a willful failure to use existing carry-over appropriations that were available to pay them during the shutdown.  Such a claim is fundamentally different than the one asserted in the related lawsuits and prior lawsuits resulting from a previous shutdown.  Moreover, a single point of contact is neither necessary not appropriate.  Plaintiffs in this case and those similarly situated are members of a service employee union bargaining unit whose interests are discrete and who do not wish to have their interests voiced through counsel not of their choosing.  The best way to

1

assure they receive adequate representation is by allowing them to litigate through counsel of their choosing.

I.      **THROUGH THEIR AMENDED COMPLAINT, PLAINTIFFS WILL ALLEGE A CLAIM THAT IS FUNDAMENTALLY DIFFERENT FROM THE CORE CLAIMS OF THE OTHER LAWSUITS SET FORTH IN THE NOTICES OF DIRECTLY RELATED CASES.**

This Court has the discretion to consolidated multiple actions "when actions involve[e] a common question of law or fact." RCFC 42(a).

> The court has broad discretion to determine whether consolidation is appropriate. *See Johnson*, 899 F.2d at 1284; *Skirvin v. Mesta*, 141 F.2d 668, 672–73 (10th Cir.1944) (longstanding precedent that the trial judge has broad discretion to consolidate). Where common questions of law or fact are involved and consolidation would avoid unnecessary costs, consolidation is encouraged. *Johnson v. Mississippi Valley Barge Line Co*., 34 F.R.D. 140, 142 (W.D.Pa.1963).

*Cienega Gardens v. United States*, 62 Fed. Cl. 28, 32 (2004). This Court has further explained: "Two inquiries are required to determine whether consolidation should be granted. First, whether a 'common question of law or fact' exists in both cases . . . .  Second, whether considerations regarding 'the interest of judicial economy' outweigh 'the potential for delay, confusion and prejudice that may result from consolidation.'" *Lucent Techs. Inc. v. United States*, 69 Fed. Cl. 512, 513 (2006) (citation omitted).

Defendant contends that this lawsuit is directly related to twelve other cases that were filed around the timeframe of the recent partial shutdown of the federal government. Specifically, Defendant argues that all thirteen lawsuits allege the "same set of operative facts." On this basis, the Government requests consolidation and the appointment of one point of contact to serve as counsel for all Plaintiffs.  Since filing this lawsuit, however, Plaintiffs' counsel has learned additional information which has required an amended complaint.  Although the amended complaint has not yet been filed, Plaintiffs are already involved in discussions with

the Defendant's counsel about the amendment and are preparing to submit a motion and the amended complaint.  The gravamen of Plaintiffs' amendment will be that one or more of the Plaintiffs' employer agencies was fully funded and able to meet payroll obligations for the pay period ending January 5, 2019, but elected to require affected workers to report for duty to work regular and overtime, and then did not pay those affected workers on their designated pay day. Thus, when the affected workers received paychecks for $0.00, the partial shutdown was not the direct cause.

Such allegations place this lawsuit apart from the others.  Plaintiffs recognize that several of the other lawsuits with which the Defendant seeks to consolidate allege that the Fair Labor Standards Ac claims ("FLSA") asserted arise out of the lapse in appropriations (i.e., the partial government shutdown).  Plaintiffs' own Complaint originally referenced the shutdown extensively.  Nevertheless, while the shutdown is certainly an important component of the milieu out of which Plaintiffs' case arises, Plaintiffs' subsequently learned that one or more of their employer agencies had appropriations sufficient to make payroll for excepted and exempted workers throughout the shutdown.  Which sub-agencies (all of which will be a part of the Department of the Interior) had carry-over funds, and what factors led to the decision to issue $0.00 paychecks, constitute factual inquiries and discovery requirements that do not overlap with the other cases.[1]

By necessity, given this case's distinct facts, the legal theories will also be different. *Martin v. United States* has been cited as providing the foundational legal arguments for liquidated damages in the current set of FLSA lawsuits filed during and shortly after the

---

[1] Plaintiffs note that one of the groups of Plaintiffs made a similar allegation that appropriations existed to pay the Air Traffic Controllers for December 23, 2018.  *See Quentin Baca et al. v. United States*, 19-213C (Doc. 13).  For that reason and others, Plaintiffs in 19-213C also oppose consolidation.  This case presents an even more compelling basis for opposing consolidation because the Plaintiffs in this case were paid $0.00 on their original paychecks for an entire pay period following December 23, 2018 even though funds existed.

shutdown.  Again, in their original complaint, Plaintiffs in this case also cited *Martin*.  Emerging facts regarding the existence of carry-over appropriations mean that the legal basis for liquidated damages in this case will not dependent on the analysis of *Martin*.  Decisions regarding liquidated damages in the other cases will likely not be dispositive of liquidated damages in this case.

Aside from the clear differences between this case and the others, consolidation would unduly prejudice the Plaintiffs in this case. *Martin*, upon which the other Plaintiffs rely, has been in active litigation since 2013 and has yet to reach a resolution.  There is a possibility that similar litigation is in store for many of the other lawsuits, especially given the sizes of the putative collective actions, the potential for an appeal in *Martin*, and the fact that the government is already seeking a stay of this matter pending the outcome of *Martin*. *See* Doc. 9.   The government's request to suspend this lawsuit pending the completion of *Martin* was premised on the notion that *Martin* essentially drives the outcome of this and the other current FLSA lawsuits. *See id*.   While the Court denied the motion, the door remains open for a stay if the posture of *Martin* changes in a way that impacts this case.  *See* Doc. 10.

This case, however, should not face the potential for the delay that might result from a stay.  The legal theories that will be advanced here will not depend on *Martin* and should not be amenable to any delay that a change in posture of *Martin* might bring about.  *See Lowry Econ. Redevelopment Auth. v. United States*, 71 Fed. Cl. 549, 553 (2006) (citing the "potential for delay" as basis for denying a request for consolidation of otherwise factually similar cases). *See also Entergy Nuclear Indian Point 2, LLC v. United States*, 62 Fed. Cl. 798, 803 (2004) ("Overall, the balance of factors currently tips against consolidation, largely because the ENIP case is procedurally at a significantly more advanced stage. Judicial efficiency would not be

served by consolidation at this time, and ENIP might be prejudiced by the delay that would ensue from consolidation.").

To summarize, the distinct factual questions and the attendant unique discovery that will be needed in this case, combined with the prejudice consolidation poses to Plaintiffs, counsel strongly against consolidation.

## II.  THE APPOINTMENT OF A LEAD COUNSEL IN THE EVENT OF CONSOLIDATION WILL NOT ADEQUATELY PROTECT THE INTERESTS OF PLAINTIFFS IN THIS CASE.

The United States' request for the appointment of a lead counsel in the cases it seeks to consolidate depends heavily on the allegedly similar or identical nature of all or most of the lawsuits set forth in its notices of related cases.  As set forth above, there are major differences between this lawsuit and the others.  Plaintiffs acknowledge that the appointment of a lead counsel in complex class or collective action litigation may sometimes be appropriate to avoid repetition and duplication of efforts.  *See, e.g. Sparano v. Lief,* 2011 U.S. Dist. LEXIS 21144, *6 (S.D. Cal. Mar. 3, 2011) (quoting *MacAlister v. Guterma,* 263 F.2d 65, 69 (2d Cir. 1958)).  In the context of addressing a request for pre-certification interim lead counsel under Fed. R. Civ. P. 23(g), one court stated:

> In complex cases, courts may appoint a plaintiff leadership structure to coordinate the prosecution of the litigation. Fed.R.Civ.P. 23(g)(3) provides that courts "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Interim class counsel's role is to "fairly and adequately represent the interests of the class." Fed.R.Civ.P. 23(g)(4). While not statutorily required, the appointment of interim class counsel may be helpful in "clarify [ing] responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Federal Judicial Center, Manual For Complex Litigation § 21.11 (4th ed.2004); *see also MacAlister v. Guterma,* 263 F.2d 65, 68–69 (2d Cir.1958) (benefits of appointing lead counsel include eliminating duplication and repetition).

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 271–72 (S.D.N.Y. 2009).

Here, lead counsel is not required by statute or by rule, and the principles articulated in *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.* only confirm that lead counsel is not needed, or at least, that Plaintiffs in this cases should not have to work through a separately appointed lead counsel.  Plaintiffs interests in this matter are best represented by the counsel of their choosing.  This case is brought on behalf of the named Plaintiffs and on behalf of those similarly situated.   Those similarly situated are members of a relatively small, discrete bargaining unit for the Federation of Indian Service Employees.  Most or all these employees received $0.00 paychecks for a pay period despite the existence of appropriations to fund payroll for that pay period.  The focus of the other lawsuits may be on legal issues raised in *Martin*.  As such, Plaintiffs' unique claims will not be adequately addressed by a lead counsel for cases that do not have the same factual and legal questions.

Additionally, Plaintiffs' counsel in this matter is best situated to coordinate with Plaintiffs and those similarly situated.  Plaintiffs' of-counsel serves as General Counsel to FISE and has the ability to contact bargaining unit members.  Many of the FISE bargaining unit employees serve in remote areas, such as on or near tribal lands and reservations.  Electronic means of communication, such as telephone and electronic mail, are not adequate for many of the Plaintiffs and those similarly situated because of their remote locations.  FISE has the leadership and communication structure to contact, convey, and receive information from bargaining unit employees. During previous, unrelated litigation, counsel located in D.C. proved completely ineffective at understanding and addressing the unique communication needs of FISE' Native American membership which left thousands of members unaware of their rights under that

litigation. Therefore, Plaintiffs strenuously object to the appointment of lead counsel located thousands of miles away, with no proven ability to meet the unique and difficult communication needs of Native American clients.  Another point of contact between FISE counsel and the Court is more likely to dilute rather than protect Plaintiffs' interests.

Finally, to the extent that the parties can coordinate their discovery efforts to avoid duplication, Plaintiffs will be happy to work cooperatively with the attorneys for the other cases. Plaintiffs, however, should be able to speak through their selected legal counsel.   Their counsel will be attentive to the unique legal and factual issues associated with their case and will vigorously pursue the relief that is appropriate for them.

## III.     CONCLUSION.

Consolidation is not appropriate because this lawsuit presents substantially dissimilar factual and legal questions when compared with the other lawsuits listed on the notices of related cases. Plaintiffs' and those similarly situated are also Furthermore, Plaintiffs will be prejudiced by the potential delays associated with consolidation.  If, however, the Court is inclined to consolidate the cases, the Plaintiffs urge the Court to either reject the appointment of lead counsel or to permit additional briefing specifically related to the issue of who should be lead counsel.  The challenging communication needs of Plaintiffs and the FISE bargaining unit are such that Plaintiffs are not amenable to representation by a separate lead counsel.

WHEREFORE, Plaintiffs Tony Rowe *et al*. respectfully request that the Court deny the Motions to Consolidate (Docs. 8 and 15) and that it grant any further relief that it deems just and appropriate.

//
//
//
//

//
//
Dated this 11 day of March 2019.

Respectfully submitted,

LAW OFFICE OF MARSHALL J. RAY, LLC


*/s/ Marshall J. Ray*
Marshall J. Ray
Attorney for Plaintiffs
Law Office of Marshall J. Ray, LLC
201 12th Street NW
Albuquerque, NM 87102
(505) 312-7598


Of Counsel for All Plaintiffs:

LAW OFFICE OF JASON J. LEWIS, LLC

*/s/ Jason J. Lewis*
Jason J. Lewis
Of Counsel for All Plaintiffs
Law Office of Jason J. Lewis, LLC
201 12th Street NW
Albuquerque, NM 87102
(505) 244-0950